## In re LEAVITT'S ESTATE.

### (*Surrogate's Court, New York County.* January 31, 1889.)

1. DESCENT AND DISTRIBUTION—INHERITANCE TAX—NON-RESIDENT.
   Laws N. Y. 1885, c. 483, imposing the "collateral inheritance tax," applies to shares of stock in a New York corporation, the proceeds of which pass by the will of a testator resident and domiciled in another state.

2. SAME—APPRAISEMENT—VALUE OF ANNUITIES.
   Though, by the terms of the will, it may and probably will become necessary to deplete the principal of the fund to pay life annuities, and it is thus impossible to determine the present cash value of the annuities, that fact is immaterial to the appraisement of the estate for the purpose of imposing the tax, as the property should be taxed at its market value at testator's death.

On motion to confirm appraiser's report.

Edward Leavitt by his will directed his entire estate, consisting wholly of stocks in a New York corporation, to be held by his executors in trust to pay out of the income annuities of $2,000 each to Lucy A. A. Fisher and Mary U. Fisher for their respective lives. If the income should exceed $4,000 in any year the excess was to be divided among testator's nephews and nieces. Should it be less than that amount the deficiency was to be made up from the principal. The principal remaining at the death of the annuitants was to be divided among testator's brothers, sister, and nephews and nieces. The annuitants were, respectively, the widow of testator's deceased wife's brother, and her daughter.

*Geo. C. Kobbe*, for the executors. *Latham G. Reed*, for the remainder-men. *Nathaniel Cox*, guardian *ad litem*, for the infants.

RANSOM, S. In this matter the appraiser reports that the two annuities which are subject to tax amount to $47,581, and that the whole taxable estate amounts to $58,510.02, which, even if judiciously invested, would not produce a sufficient amount of income to pay the said annuities, and adds: "I cannot ascertain that the rents, issues, profits, and income from the estate of testator will be more than sufficient to pay the above legacies and annuities, and am therefore unable to compute the value of other contingent payments of surplus income to nephews and nieces provided for in the will. The right of and direction to the executors to impair and diminish the *corpus* of the estate, if necessary, from time to time, for the purpose of making good the annuities, and the apparent necessity for so doing for want of adequate income, renders any appraisement of the value of the contingent interests provided for in the will premature during the life-time of the annuities." Counsel for certain of the beneficiaries appear in opposition to the report, and claim that the appraiser errs in reporting any of the property subject to the tax, upon the ground that the whole estate in this state is personal property, and that, as the testator was a resident of and domiciled in the state of Connecticut, the surrogate has no jurisdiction; and it is a well-settled rule of law that personal property follows the domicile, and therefore there is nothing in this state subject to the tax. Counsel for the executors claim that it is impossible for the appraiser to fix a hard cash value on these annuities, as the executors are required to pay to each of the two annuitants $500 quarterly, and, as there is not enough income, there will be, every three months, some diminution of principal, which sum will then cease to bear interest. This is a case, say

counsel, where the value becomes mere guess-work, and is not within the contemplation of the collateral inheritance tax act, and they ask that, at any rate, in view of all the considerations here urged, the tax should not be more than half. Counsel for the comptroller contends that the report should be confirmed, upon the ground that the sacrifices of stock which counsel for the executors claim have to be made to meet these payments have nothing to do with the question of the tax, unless it can be shown that such sacrifices will absolutely exhaust and wipe out the estate, so that the life-interests will be cut off, and that as the appraiser reports that the value of the estate is $58,-510.02, and the valuation of the life-interests $47,581, the absolute exhaustion of the estate is a contingency which it would be impracticable to consider.

The question of jurisdiction would appear to be settled by *In re Enston,* 46 Hun, 506, (Second department,) in which the court held that property in this state, belonging to a non-resident testatrix, was subject to the tax imposed by chapter 483 of the Laws of 1885. As regards the claim of the executors, that it is impossible to fix the hard cash value of the annuities on account of the probable and even actual diminution of the property, I hold that the appraiser has nothing to do with such matters. He is only required to find the fair market value of the property at the death of the decedent, and the question of the possible appreciation or depreciation of such property three months or three years after that event is not material. An order should therefore be entered, confirming the report of the appraiser, and assessing and fixing the tax upon the estates he has reported as subject.